SAUER *v.* McCLINTIC-MARSHALL CONSTRUCTION CO.

1. PLEADING—SALES—CONTRACTS—BREACH.

Where, in a suit for a breach of a contract of sale, the amended declaration averred that plaintiffs duly and seasonably furnished to the defendant complete information for detail drawings as required by the contract and duly and seasonably kept, observed, and performed all of the terms and conditions of said contract on their part to be kept, observed, and performed, a demurrer was rightly overruled, particularly after the first trial wherein evidence covering the allegation was offered and received so that the defendant understood the claims made by plaintiff: the objection that the declaration stated the conclusions of the pleader was not sufficient and is held to be over technical.

2. DAMAGES—EVIDENCE—MARKET VALUE.

The legal duty of the buyer to minimize his damages so far as possible does not deprive him of his right to recover in case he made no inquiries about market values before he purchased, but his maximum recovery should not exceed the amount to which he could have reduced his damages if he had sought for and obtained such bids.[1]

[1]The duty to prevent or reduce damages on breach of contract of sale or purchase is discussed in note in 52 L. R. A. 259.

189 Mich.—37.

3. SAME—VERDICT—SALES—BREACH.
  *Held*, also, that the amount of the verdict was not ex-
  cessive, and that the award of less than certain witnesses
  testified the difference between market price and contract
  price amounted to' was sufficiently justified by plaintiff's
  evidence.

4. SAME.
  The measure of damages for failure to deliver steel or-
  dered was the difference between the contract price and
  market price at the time and place of delivery.

5. SAME—EVIDENCE FIXING AMOUNT OF MARKET PRICE.
  Taking into consideration the amount of the verdict,
  which was less than the difference between the contract
  price and the price paid by plaintiffs for the steel, the
  reception of evidence offered by the plaintiffs as to the
  bids that they received about the time of entering into
  the contract was not prejudicial.

Error to Washtenaw; Kinne, J. Submitted Octo-
ber 13, 1915. (Docket No. 64.) Decided December
22, 1915.

Assumpsit by Charles A. Sauer and another against
the McClintic-Marshall Construction Company for
breach of a special agreement. Judgment for plain-
tiffs. Defendant brings error. Affirmed.

*Cavanaugh & Burke*, for appellant.

*Robert E. Bunker* and *Arthur Brown*, for appellees.

BROOKE, C. J. Upon a former trial of this case a
judgment in favor of plaintiffs in the sum of $1,026.34,
which included interest, was reversed, for two reasons:

*First*. Because the declaration was wanting in spe-
cific allegations that plaintiffs furnished to defendant
"complete information for detail drawings" under the
following clause of the contract:

"All material is to be delivered f. o. b. cars in Ann Arbor, within eight to ten weeks after receipt of complete information for detail drawings."

*Second.* Because the verdict was held to be against the weight of the evidence, and contrary to law upon the question of the measure of damages. Upon this point, speaking through Mr. Justice STEERE, we said:

"The contract price of the material to be furnished by defendant was $1,450. Plaintiffs bought the same material of the Toledo Iron & Wire Company at an increased price of $1,002, without obtaining quotations from other competitors or making any inquiries elsewhere as to the condition of the market or possibility of securing a more favorable price. The contract required 34 tons of steel, and it was shown that such steel could have been bought in the open market during August, September, and October of that year at an advance of $8 per ton, and the usual price for quick delivery was about $4 per ton extra. As the testimony stands in this record, it appears by the weight of evidence, and in some particulars by the undisputed evidence, that plaintiffs made no such general inquiry and effort, and exercised no such diligence to secure the material at the fair market price, and thus diminish the damages, as the law requires, and that, had they done so, a substantial reduction from the price paid might, and probably would, have been obtained. In that particular we conclude that the verdict was against the weight of evidence and contrary to law." *Sauer* v. *Construction Co.*, 179 Mich. 618 (146 N. W. 422).

To meet the first ground plaintiffs filed an amended declaration with reference to performance, as follows:

"And the said plaintiffs aver that they duly and seasonably furnished to said defendant complete information for detail drawings as in and by said contract they were required to do, and duly and seasonably kept, observed, and performed all of the terms and conditions of said contract on their part to be kept, observed, and performed."

Defendant interposed a demurrer to the amended declaration, which was overruled by the circuit court and an exception was duly taken.

The first error discussed by appellant relates to the overruling of the demurrer. The ground of demurrer is stated as follows:

"It appears from said declaration that as a condition precedent to any liability on the part of defendant the plaintiffs were under obligation to furnish to defendant complete information for detail drawings; and it is nowhere alleged in said declaration, except in the form of a legal conclusion, that said information was ever furnished to the defendant, and said declaration wholly omits any allegation respecting the time, place, or manner of the performance of said condition precedent on the part of the plaintiffs, and wholly omits to allege what, if anything, plaintiffs did which constituted a performance on their part of said condition precedent; and the attempt to allege any such performance consists wholly of the allegation of a legal conclusion, and wholly omits to state any facts representing such performance."

In our former opinion at page 628 of 179 Mich. (at page 425 of 146 N. W.), we said:

"Defendant agreed to deliver all material at Ann Arbor f. o. b. within 8 or 10 weeks after receipt of the information desired, and had offered to deliver within 5 weeks for $200 additional price. Correspondence on the subject not resulting in obtaining all the information desired, defendant's agent visited plaintiff's office on August 6th, and from there went to the architect's office. As a result the defendant was then furnished with complete information—just how or by whom is unimportant. The condition precedent imposed upon plaintiffs was complied with in all essentials within a reasonable time. Assuming that after this it was their duty to see the defendant's shop drawings for its workmen were approved by the architect, this was done by August 19th, which yet gave defendant the maximum contract time before the building was to be completed. Defendant had already received drawings for the structural steel on July 6th, and the architect's plans

on July 23d. We find nothing in the contract to suggest that it was made with reference to subsequent market conditions affecting defendant's ability to perform, and the testimony shows it was possible to perform it within a month after receiving the order."

In view of the fact that the case had already been tried once and evidence as to the performance of the condition was known to defendant, and had been passed upon by this court, we think that the objection to the declaration as amended is over-technical and that the demurrer was properly overruled. *Hanselman* v. *Carstens*, 60 Mich. 187 (27 N. W. 18).

The second assignment of error deals with the amount of the recovery, which it is urged is still excessive, and with the evidence touching the measure of damages, and to the charge of the court in relation thereto. Upon this trial plaintiffs' recovery was $651.45, which included interest for about three years. Upon the second trial counsel for plaintiffs admitted that he could not furnish testimony showing that inquiries had been made as to the price from others than the company from which it bought at or about the 27th day of September. He said:

"I am not going to be able to offer any testimony as to making inquiries of others about the 27th day of September, but I am going to ask leave to show that we had figures from other parties, and it has a tendency to prove what the market price was; and, furthermore, if we bought at the market price of that material, if we paid no fancy price, then we have complied with the rule which requires us to make an effort to reduce the damages."

He was permitted, however, to produce evidence of the amount of competitive bids received for this steel from other concerns in July before the contract was awarded. Upon the question of the measure of damages, plaintiffs examined Mr. Frank Powell, who, under the name of the Toledo Iron & Wire Works,

actually furnished the steel to the plaintiffs. He testified that he charged plaintiffs $60 a ton for the steel, and that that was its market price at that time. (The latter part of September, 1912.)

Defendant introduced the testimony of Mr. Geo. H. Danforth, structural engineer for the Jones & McLaughlin Company, to the effect that at that time steel of this character was worth about $52 a ton. Likewise the testimony of Mr. Clyde Taylor, employed by structural steel manufacturers, who fixed the value at that time at $55 per ton. Also the testimony of Mr. L. A. Walker, engineer for defendant company, who fixed the value in the latter days of September at $50 per ton. Under all this testimony it is the claim of the defendant that the jury returned a verdict of at least $5 per ton, or $170, in excess of the true measure of damages, and that as to such excess the verdict is against the weight of evidence, and contrary to law. In reaching this conclusion, defendant ignores the testimony of Mr. Powell, who actually sold the steel, and who testified to having made contracts at about the same time, at the same figure, for steel of a like quality and quantity.

Defendant requested the court to charge that the plaintiffs could not recover to exceed $12.50 per ton, that being the amount of the highest estimate of the value of the steel when it was ordered on September 27th given by any witness except Powell, who actually sold the steel. This request was refused and the court charged:

"If you find under the evidence and the instructions I have given you that the plaintiffs are entitled to recover, they are entitled to recover as damages whatever sum they necessarily paid for the structural steel in excess of the sum they agreed to pay the defendant therefor, * * * provided that they purchased the said structural steel * * * at the best or lowest prices obtainable under all the circumstances of the case."

An analysis of the verdict would seem to indicate that the jury determined that the best or lowest price obtainable was $60 per ton, and not $55 a ton, or any less sum, as testified to by the various witnesses on behalf of defendant.

In holding as we did in our former opinion that it was the legal duty of the plaintiffs to minimize the damages to defendant as far as possible through inquiries of different manufacturers, in order that the steel should be obtained at the lowest possible price, it was not our intention to prevent recovery on the part of the plaintiffs in case no such inquiries had been made, but to compel plaintiffs to accept such a judgment as the evidence showed he would have been entitled to recover in case they should have performed their legal duty by securing the best price obtainable at the time the steel had to be purchased. The measure of damages for failure to deliver steel was the difference between the contract price and the market price at the time and place of delivery. *Galinski* v. *Thomas*, 178 Mich. 589 (146 N. W. 191).

Error is assigned upon the action of the court in admitting testimony as to bids of others received by plaintiffs in July. While we are of opinion that the evidence was inadmissible, it is apparent from the amount of the verdict it was without prejudice to defendant. The recovery was in fact more than $400 less than the amount actually paid by the plaintiffs to the Toledo Iron & Wire Works.

We discover no reversible error, and the judgment is therefore affirmed.

The claim made by counsel for plaintiffs that this is a proper case for the assessment of damages as for a vexatious appeal has been considered, but we believe it to be without merit.

PERSON, KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.