# STATE OF MICHIGAN

# COURT OF APPEALS

TODD OAKLEY,

       Plaintiff-Appellant,

v

ROBERT RUTAN, DEBORAH RUTAN, and
NATURS DESIGN, INC., doing business as
REMZZZS.COM,

       Defendants-Appellees.

UNPUBLISHED
April 24, 2018

No. 337546
Jackson Circuit Court
LC No. 16-002005-CK

Before: MURPHY, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(10) in this case involving a contractual dispute. We affirm, albeit for reasons different than those expressed by the trial court.

In 2013, plaintiff sued defendants, and the parties engaged in mediation in 2014 in an effort to settle the litigation. The mediation was successful, resulting in a settlement agreement in April 2014, pursuant to which defendants were to pay plaintiff $290,000 by August 12, 2014.[1] Defendants failed to pay the $290,000 required under the settlement agreement, and in February 2015, plaintiff filed a motion for entry of judgment against defendants, which was denied, given that, according to plaintiff, the court wished to delay entering a judgment. In June 2016, plaintiff filed a second renewed motion for entry of judgment, and this time the trial court entered a judgment in favor of plaintiff in the amount of $271,336, plus $20,461 in statutory interest, making for a total judgment of $291,797. The judgment was scheduled to become final on July 12, 2016, 21 days after its entry on June 21, 2016.

---

[1] The mediation settlement is not contained in the record, but there is no dispute that part of the settlement required defendants to pay plaintiff $290,000 by August of 2014. Defendants indicate in their brief that the mediation settlement also required them to pay plaintiff $50,000 within 30 days, which was done, and to make 72 monthly installment payments of $2,000, which provision was also satisfied, presumably early.

-1-

Beginning on July 5, 2016, there were numerous phone and email communications and negotiations between the parties for purposes of giving defendants additional time so that they could obtain financing to pay the judgment or to otherwise arrange for some type of payment plan relative to the judgment. On the evening of July 19, 2016, plaintiff's counsel emailed defendants' attorney the outline of a deal between the parties as plaintiff's counsel understood it. Pursuant to the email, the purported agreement entailed defendants withdrawing a motion for reconsideration, plaintiff conditionally dismissing the judgment, and defendants paying plaintiff $200,000 by 5:00 p.m. on July 25, 2016, and another $130,000 by 5:00 p.m. on October 14, 2016. With regard to the initial $200,000 payment, the alleged agreement provided that it was to be paid in two cashier's checks, one for $30,000 "for the consideration specific to the agreement to delay collection" and one for $170,000 "to be applied to the outstanding Judgment." The email from plaintiff's counsel additionally indicated that, if the two cashier's checks were received by the July 25 deadline, the agreement would involve plaintiff withdrawing or canceling a request and writ for garnishment that was tendered to the court earlier in the day. The email concluded with a request for confirmation that the recited provisions accurately reflected the parties' negotiated agreement. On the morning of July 20, 2016, defendants' attorney responded, stating, "Yes. Unless we pay the whole thing off in the next couple of days." The record does not contain a specific documented response by plaintiff's counsel to defendants' reply and the statement about the possibility of defendants paying the "whole thing off in the next couple of days." However, plaintiff has proceeded as if that payoff "condition" had been acceptable and part of the agreement.[2]

Between July 20, 2016, and 5:00 p.m. on July 25, 2016, defendants made payments to plaintiff amounting to $260,000.[3] The payments, however, were not in the form of two cashier's checks for $30,000 (delay collection) and $170,000 (toward judgment), although they exceeded by $60,000 the amount allegedly due to plaintiff by the July 25 deadline for purposes of delaying collection on the judgment. In an email from defendants' attorney to plaintiff's counsel at 4:05 p.m. on July 25, 2016, the attorney noted that $260,000 had been submitted to plaintiff and that defendants were "ready to tender the balance of the amount you are seeking in the garnishment." The email further indicated that it was counsel's understanding that the garnishment was approximately $271,000, but she asked plaintiff's attorney to let her know how much needed to be paid to satisfy the balance owed. At 4:34 p.m. on July 25, 2016, plaintiff's attorney

---

[2] The flurry of emails that were exchanged between the parties during negotiations referenced, at times, phone conversations regarding the negotiations. Possibly the payoff condition had been discussed and approved by plaintiff's attorney but was inadvertently not included in the attorney's email to defense counsel outlining the agreement. Regardless, plaintiff accepts that the payoff condition was part of the agreement.

[3] Defendants state in their brief that "[o]n July 25, 2016, [they] tendered a cashier's check for $260,000.00" to plaintiff's attorney. However, in an accounting worksheet generated by plaintiff's counsel, it reflected that counsel received from defendants a $100,000 payment on July 21, 2016, a $100,000 payment on July 25, 2016, and a second payment on July 25 of $60,000. Either way, there is no dispute that $260,000 was paid to plaintiff by 5:00 p.m. on July 25, 2016.

responded by email, sending defendants' counsel a prejudgment interest calculation worksheet showing an outstanding balance of $62,424, which included $30,000 per the agreement to delay collection. At 4:51 p.m. that same day, defendants' attorney emailed plaintiff's counsel stating that "[a]lthough I have not received a response[,[4]] my clients are on the way to your office with an additional check for $12,000.00." Apparently, this amount was to cover the difference between the $260,000 in payments and the amount that defendants' attorney believed was the amount listed in a request and writ for garnishment. It appears from the record that defendants arrived at the office of plaintiff's counsel with the $12,000 payment a short time after he left at 5:10 p.m., but the office was closed, and the $12,000 was never paid to plaintiff.

In an email from plaintiff's attorney to defense counsel dated July 26, 2016, the attorney stated in full:

> It is my understanding, from our multiple discussions yesterday, that none of the funds paid to [plaintiff] to date . . . are to be applied toward the $30,000 referenced in my email . . . dated July 19 . . . . I want to be certain that we are on the same page with respect to how the payments are being applied.

In response ten minutes later by email, defendants' attorney stated, "To be clear, all payments are to be applied to the judgment entered in June. We obviously have no agreement to delay collection." The file contains a request and writ of garnishment, dated July 25, 2016, indicating that the unsatisfied judgment was $32,424, which calculation included judgment interest and postjudgment costs, minus the $260,000 that defendants paid to plaintiff.[5] Defendants' bank was the garnishee. There does not appear to be a dispute that plaintiff successfully garnished the full $32,424 from defendants' bank account, resulting in plaintiff collecting a total of $292,424 from defendants when the $260,000 is added to the garnishment amount. There also does not appear to be any dispute that the $292,424 satisfied the judgment.

On July 28, 2016, plaintiff filed the present lawsuit against defendants, alleging breach of contract arising out of the postjudgment negotiations and agreement, as reflected in the email by plaintiff's counsel setting forth the understood agreement and the email by defendants' attorney confirming the agreement, unless the judgment was paid "off in the next couple of days." The crux of this dispute concerns the $30,000 that plaintiff seeks for his agreement to delay collection efforts on the judgment.

On defendants' motion for summary disposition under MCR 2.116(C)(8) and (10), the trial court granted the motion pursuant to MCR 2.116(C)(10) in a written opinion and order, ruling as follows:

---

[4] Two different attorneys from the law firm representing defendants were involved in the communications and negotiations with plaintiff's counsel, which may have created some confusion at times.

[5] Plaintiff alleged that the request and writ for garnishment was filed with the court at 4:30 p.m. on July 25, 2016.

In this case the plaintiff's bargained for $30,000 dollars and the defendants bargained for the plaintiffs not to garnish their bank account. Here the defendants tendered a check for $260,000 dollars on July 25, 2016[,] $60,000 dollars over the agreed upon $200,000 which was to be applied $30,000 to the consideration of the agreement and the remainder was to be applied to the judgement. The entire amount was applied to the judgement, the plaintiffs failed to take the consideration as agreed upon. Then the plaintiffs turned around and garnished the bank account of the defendants that same day not giving the defendants the benefit that they bargained for. Therefore this court finds that there was no legal consideration to form a binding contract.

For the second part of this analysis this court looks at the evidence in the light most favorable to the non-moving party and here there is no evidence that this court can look to that a contract was formed between these two parties and that the defendants breached that contract. This court finds that for this agreement to form a contract the plaintiff would have had to take $30,000 from the $260,000 that was paid putting the remained to the judgement and then hold off on collecting the rest of the judgement till October 14, 2016, now if that would have happed there would have been a valid contract formed between the parties. That is not the case the plaintiff applied the entire $260,000 to the judgement and garnished the rest of the judgement from the bank account that same day which then satisfies the judgement, now the plaintiff is asking the court to grant them $30,000 when they did not do what they were supposed to under the agreement, which in this courts view would be giving the plaintiff what they bargained for when the defendants would not get what they had bargained for in the agreement which was time.

This court finds that there was no legal consideration to form a binding contract on July 25, 2016 due to the plaintiff's actions and in finding that there was no consideration finds that there is no issue of material fact to the case.

Plaintiff appeals as of right.

We review de novo a trial court's ruling on a motion for summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Additionally, this Court reviews de novo issues concerning the proper interpretation of a contract and the legal effect or application of a contract. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).[6] "The

---

[6] In regard to the principles governing a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), observed:

In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought

cardinal rule in the interpretation of contracts is to ascertain the intention of the parties[;] [t]o this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). In light of this rule, "[i]f the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965); see also *Frankenmuth Mut Ins Co v Masters,* 460 Mich 105, 111; 595 NW2d 832 (1999). However, a court cannot create ambiguity where the terms of the contract are clear. *Frankenmuth Mut*, 460 Mich at 111.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). "The party seeking to enforce a contract bears the burden of proving that the contract exists." *Id.* Moreover, "a contract may consist of a mutual exchange of promises, or the performance of a service in exchange for a promise." *Id.* at 235-236 (citation omitted). With respect to legal consideration, it exists "if the promisee in return for a promise does anything legal which he is not bound to do or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promissor or not." *Stott v Stott*, 258 Mich 547, 552; 242 NW 747 (1932).

Contrary to the trial court's conclusion, there was legal consideration sufficient to form a binding contract. In return for defendants' promise to pay plaintiff an additional $30,000 over the amount of the judgment, plaintiff promised to refrain from doing something he had a legal right to do – taking immediate steps to collect on the judgment, such as through a garnishment. All of the elements regarding the formation of a contract were established. Next, it is necessary to characterize the nature of the contract. The delayed-collection component of the contract,

---

under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

which included the promise by defendants to pay the additional $30,000, was subject to a provision akin to a condition precedent. Contract law recognizes that some agreements are not binding at the outset, entailing a condition precedent, which is a fact or event that the parties intend must take place before a contract is enforceable. *Wells Fargo Bank, NA v SBC IV REO, LLC*, 318 Mich App 72, 93; 896 NW2d 821 (2016). A condition precedent can be "in the affirmative or negative." *Sauer v McClintic Marshall Constr Co*, 179 Mich 618, 626; 146 NW 422 (1914). Here, the delayed-collection provision was only intended to be implicated and enforceable if defendants failed to pay off the existing judgment in full "in the next couple of days" following July 20, 2016, which defendants failed to accomplish, even if we took into consideration the entire $260,000 that had been paid by defendant over the next five days.[7] Accordingly, the delayed-collection agreement was triggered, requiring defendants to deliver to plaintiff by 5:00 p.m. on July 25, 2016, two cashier's checks, one for $30,000 "for the consideration specific to the agreement to delay collection" and one for $170,000 "to be applied to the outstanding Judgment."

Although by 5:00 p.m. on July 25, 2016, defendants had paid plaintiff $260,000, the payments did not specifically include a $30,000 cashier's check targeted to or designated for delaying collection of the judgment. Any doubt on that issue was eliminated when defendants' attorney clearly and unambiguously informed plaintiff's counsel that none of the $260,000 was to be applied toward the delayed-collection amount of $30,000. Furthermore, defense counsel also stated that there was "no agreement to delay collection," plainly establishing wholesale repudiation of the contract with no intent to *ever* perform by paying $30,000 in addition to the judgment. Under these circumstances, defendants were in substantial breach of the contract.

We conclude that, faced with the breach of contract, plaintiff had one of two options, the first of which was to not perform his obligation under the contract, i.e., temporarily refrain from collecting on the judgment, in light of defendants' substantial breach. See *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (a party who first breaches a contract cannot maintain an action against the other contracting party for failure to perform). Plaintiff took this course of action and immediately garnished defendants' bank account, collecting the amount necessary to fully satisfy the judgment. Indeed, plaintiff was essentially in the same position had defendants themselves been able to meet the contingency of paying off the

_____

[7] Assuming that use of the word "couple" was not intended to mean that defendants would only have "two" days to pay the judgment, but rather a "few" days to do so, see *Merriam-Webster's Collegiate Dictionary* (11th ed), it is clear that a few days had elapsed by 5:00 p.m. on July 25, 2016, considering that defendants' attorney confirmed the agreement on the morning of July 20, 2016. Moreover, the fact that defendants were scrambling in an effort to pay off the judgment late in the day on July 25 indicates to us that they viewed that date as a deadline to pay the judgment in full. Also, given that 5:00 p.m. on July 25, 2016, was the deadline relative to delivering two cashier's checks to plaintiff, one of which was to be dedicated to paying the $30,000 consideration for a delay in collection efforts, it would make little sense to conclude that the parties intended *a later deadline* with respect to defendants' opportunity to satisfy the entire judgment.

judgment in full.[8]  And plaintiff was not forced to wait until possibly as late as October 14, 2016, to collect the balance of the judgment.  Stated otherwise, plaintiff did not have to incur the legal consideration he had promised in the contract.

Having opted to treat his duty to perform under the contract as discharged because of defendants' breach, plaintiff was not entitled to additionally file suit for breach of contract and attempt to collect the $30,000 delayed-collection amount.  If plaintiff wished to seek the $30,000 as damages in a contract action, he should not have immediately garnished defendants' bank account and collected the full judgment.  Instead, plaintiff should have refrained from collecting on the judgment until October 14, 2016, and then filed a contract action, assuming that defendants had not paid him the judgment plus the $30,000 delayed-collection amount by that date (this was the second option available to plaintiff).  To rule that plaintiff could garnish defendants' bank account as was done and also potentially collect $30,000 in a contract action would be to award plaintiff the benefit of having the judgment paid off in full without having waited the additional three months, while also allowing him to recover the $30,000, which was intended to compensate plaintiff for having to wait for that three-month period.

"In an action based on contract, the parties are entitled to the benefit of the bargain as set forth in the agreement."  *Ferguson v Pioneer State Mut Ins Co*, 273 Mich App 47, 54; 731 NW2d 94 (2006).  And the proper measure of damages for breach of contract is the value of benefits the aggrieved party would have received had the contract not been breached.  *Id.*  "Damages awarded in a common-law breach of contract action are 'expectancy' damages *designed to make the plaintiff whole.*"  *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 586 n 4; 624 NW2d 180 (2001) (emphasis added).  Here, while plaintiff is asking for the benefit of the bargain in terms of damages, he is doing so without acknowledging all aspects of the bargain, which was supposed to have entailed plaintiff waiting up to three additional months to collect the full judgment.  Awarding plaintiff $30,000 in contract damages despite the fact that the judgment was fully paid before the three-month delay period commenced would result in plaintiff being awarded damages making him *beyond* "whole."  Had the contract not been breached, plaintiff would have received the $30,000 and the amount owing on the judgment, but he might have been forced to wait another three months to make the full recovery.  In sum, plaintiff fails, as a matter of law, to make the requisite showing that defendants' breach of the contract resulted in recoverable damages to plaintiff, *Miller-Davis Co*, 495 Mich at 178, given that plaintiff elected to treat his obligation under the contract as terminated and immediately garnished defendants' bank account, thereby collecting the full amount of the judgment absent the need to await later payment.  Accordingly, we affirm the trial court's order granting summary disposition in favor of defendants, albeit for reasons different than those expressed by the court.

---

[8]  One could argue that the contingency was satisfied, where defendants' funds – the $260,000 and the $32,424 garnishment from their bank account – were ultimately paid to plaintiff, although the garnishment amount was not *voluntarily* provided by defendants.  We do note that it is not clear from the record the exact point in time the garnishment was accomplished and plaintiff received the monies, although the trial court's opinion indicated that the account was garnished on July 25, 2016.

*Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").[9]

      Affirmed. Having fully prevailed on appeal, defendants are awarded taxable costs under MCR 7.219.

                                         /s/ William B. Murphy
                                         /s/ Kathleen Jansen
                                         /s/ Brock A. Swartzle

---

[9] This case was difficult to untangle, factually and legally, and the trial court's opinion, while wrongly determining that no contract was formed, reflected the concerns or problems with plaintiff's action that underlie our ruling.