### CARLAND v. HECKLER et al.

#### (Circuit Court of Appeals, Sixth Circuit. May 12, 1916.)

#### No. 2770.

1. PARTNERSHIP ☞64—CONTRACTS SIGNED WITH ASSUMED BUSINESS NAME—CONSTRUCTION OF STATUTE.

Pub. Acts Mich. 1907, No. 101, which forbids under penalty of fine and imprisonment the carrying on of any business under an assumed name, or any other than the real name of each individual owning or carrying on the business, unless a certificate is filed giving the name under which the business is done and the real name of each of the owners, does not render illegal and unenforceable a contract, signed "Lakeside Dredging Company, by" the individuals owning the business, and which expressly stated that it was entered into by such individuals, "copartners doing business under the firm name of Lakeside Dredging Company."

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 87–91; Dec. Dig. ☞64.]

2. BAILMENT ☞33—CONSTRUCTION—HIRE OF DREDGE.

A contract for the employment of a dredge in digging a canal at a stated sum per day provided that the hire should cease when the dredge reached the lake at the mouth of the canal after completion of the work, when it was being taken out and had nearly reached the lake, it grounded on a sand bar which had been formed in the mouth of the canal by a storm and was not released for nearly 30 days. *Held*, that it could not be said as matter of law that the cause of the delay was one which exonerated the employer from liability for the hire of the dredge until it reached the lake.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. § 56; Dec. Dig. ☞33.]

3. BAILMENT ☞23—REDELIVERY OF PROPERTY—DELAY IN PERFORMANCE—DUTY TO MINIMIZE DAMAGES.

In such circumstances, although under the contract it was the duty of defendant, the hirer, to take the dredge out of the canal, it was also the duty of the owners, when it stranded, to render all reasonable assistance, and in an action to recover the hire during the time of the delay it was error to charge that they did their full duty if they rendered all the assistance that defendant asked of them.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 107–116; Dec. Dig. ☞23.]

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action at law by Thomas F. Heckler and John Bechill, copartners under the firm name of Lakeside Dredging Company, against John C. Carland. Judgment for plaintiffs, and defendant brings error. Reversed.

---

P. H. Phillips, of Port Huron, Mich., for plaintiff in error.
Joseph Walsh, of Port Huron, Mich., for defendants in error.

Before KNAPPEN and DENISON, Circuit Judges, and EVANS, District Judge.

KNAPPEN, Circuit Judge. The plaintiffs (defendants in error here) were copartners; they contracted in writing with defendant, who was engaged in constructing a canal for the city of Port Huron, Mich., to furnish a steam dredge for digging a channel from Lake Huron to the partially completed canal. Plaintiffs were to man and provision the dredge and furnish all supplies, including coal, and to receive as pay $100 per day until the work should be completed, during a minimum of 18 days and a maximum of 8 calendar weeks. The work was to be completed "when the bottom of canal is down to engineer's grade." Plaintiffs were to furnish tugs for delivering the dredge at the canal, and, unless the work was completed in less than 18 days, for towing it away. It was agreed that defendant should pay plaintiffs "for all the time that their said dredge is in condition to proceed with the work" (Sundays excepted), notwithstanding the work "be delayed and said dredge not in operation on account of any occurrence in the carrying on of its work" by defendant, but not during delay due to the dredge being out of condition, or not fully manned or provisioned, or unable to do its work. There was express provision that, except as otherwise provided, defendant's liability "on account of said employment of said dredge shall cease after termination of contract at the time the said dredge reaches the mouth of said canal at Lake Huron."

The dredge was actually employed in construction work more than 7 weeks. It was then started for the lake (about half a mile distant), proceeding stern foremost. When near the lake it ran upon a bar caused by a heavy blow, which had washed in sand and gravel from the lake. As the crane and dipper were on the forward end of the dredge they were not available unless the dredge were turned about. Various attempts were made to get the dredge afloat, including pumping of the sand by steam, the use of a steam scraper, hauling by a tug from the stern, jetting the sand by hose and water pressure and dredging by an outside company. Finally the dredge was floated by means of dams forward and astern of the dredge, and the latter then turned about by cutting away the bank on each side of the canal. About 30 days were thus consumed in reaching the lake after the construction work was finished. Had there been no obstruction 2 or 3 days would have sufficed. The controversy below and here is limited to the rental charge of $100 per day during this period consumed in getting out of the canal, all rentals while the dredge was in use having been paid. Plaintiffs recovered verdict and judgment for about $3,000.

[1] 1. Defendant urges that this suit cannot be maintained because the contract sued on was void under Act 101 of the Public Acts of Michigan of 1907, which forbids the carrying on or transacting of any business in the state under any assumed name or any other than

the real name of each individual owning or carrying on the business, unless a certificate giving the name under which the business is or is to be conducted, together with the real name, residence and post office address of each of the owners of the business is filed in the office of the clerk of the county in which the business is or is to be conducted or transacted. Violation of the act is declared a misdemeanor and punishable by fine and imprisonment. This statute was considered by the Supreme Court of Michigan in Cashin v. Pliter, 168 Mich. 386, 388, 134 N. W. 482, 483, Ann. Cas. 1913C, 697. In that case the plaintiffs, who were doing business under a fictitious name, brought suit upon a written contract executed by them in that fictitious name. It was held that any contract "so made under an assumed name was illegal and not enforceable." As said at 168 Mich. 389, 134 N. W. 484 (Ann. Cas. 1913C, 697):

"The labor and materials were furnished under an illegal express contract, by virtue of which there can be no recovery."

Whether or not we are compelled to follow the decision in Cashin v. Pliter, we are entirely content to do so; for we think it correctly interprets the statute so far as it applies to the situation there presented.

In the instant case, however, while the record should, we think, be regarded as showing that plaintiffs maintained an office in Michigan for the transaction of business in the name of the Lakeside Dredging Company, which was, of course, a fictitious name, yet the contract, although signed by "The Lakeside Dredging Company by" the individual members, expressly stated that it was entered into "by and between Thomas F. Heckler and John Bechill, copartners, doing business in the firm name of Lakeside Dredging Company as parties of the first part," etc.

The pivotal question thus is whether, in the absence of express statutory declaration to that effect, we should ascribe to the Legislature an intention to forbid recovery by any copartnership under any contract it has made in compliance with law, where not only *actual information* of the names of the copartners is given, but where the contract is made *by such copartners* in their full and true names, merely because the partnership was at the time engaged in business under an assumed name, and had not given *constructive notice* to the public of the names of members of the firm. Cashin v. Pliter does not answer this question.

If the statute expressly declared illegal or unenforceable all contracts made by a copartnership which does business under an assumed name in the absence of the filing of the statutory certificate, it would be our plain duty to give it such effect. But it does not so declare; it does, however, make the transaction of business under such assumed name a misdemeanor. But this latter fact alone does not necessarily make all contracts by such copartnership unenforceable. Cashin v. Pliter, supra; Harris v. Runnels, 12 How. 86, 13 L. Ed. 901; Swisher v. Dunn, 89 Kan. 412, 131 Pac. 571, 45 L. R. A. (N. S.) 810. The question is one of legislative intent; and although, in the absence of anything in the statute having a contrary tendency, an intent to render

unenforceable contracts made *under such assumed name* would be presumed; yet the language of the statute, the subject-matter of it, the evil it seeks to prevent, and the purpose sought to be accomplished in its enactment, will all be taken into account in determining whether nonenforceability is intended to go farther. Wald's Pollock on Contracts, pp. 398–402; In re Reidy's Estate, 164 Mich. 167, 172, 129 N. W. 196.

The purpose of the statute, as stated by the Michigan Supreme Court, is "to protect the public against imposition and fraud, prohibiting persons from concealing their identity by doing business under an assumed name, making it unlawful to use other than their real names in transacting business without a public record of who they are, available for use in courts, and to punish those who violate the prohibition." Cashin v. Pliter, at page 389 of 168 Mich., at page 483 of 134 N. W. (Ann. Cas. 1913C, 697).

The instant case is not within the mischief which the statute is designed to prevent, for here there was no concealment, but, on the contrary, express disclosure of the identity of the copartners; and their real names were in fact used in the transaction involved.

The rule of invalidity usually applied under statutes of this general nature is that a "contract made in *violation of a statute is void,* and that when a plaintiff can not establish his cause of action *without relying upon an illegal contract,* he cannot recover." Miller v. Ammon, 145 U. S. 421, 426, 12 Sup. Ct. 884, 886 (36 L. Ed. 759). See, also, the principle stated in Cashin v. Pliter, supra, at page 389 (foot) of 168 Mich., 134 N. W. 482, Ann. Cas. 1913C, 697; Brewing Co. v. Wall, 98 Mich. 158, 57 N. W. 99. The later decisions of the Supreme Court of Michigan have not enlarged the strictness of construction applied in Cashin v. Pliter, but have, if anything, relaxed it.[1] Gay v. Seibold, 97 N. Y. 472, 49 Am. Rep. 533, is a case in point. That case involved a statute forbidding the transacting of business in the name of a partner not interested in the firm, or the designation "& Company" unless representing an actual partner or partners. The statute was a penal one. It was held that, although one may be doing business generally in violation of a statute, "a violation thereof may not be predicated on any transaction in which the false designation is not used." As there said: "An indictment under the statute cannot be based upon such a transaction." Similar holdings are found in O"Toole v. Garvin, 1 Hun, 92, and Donlon v. English, 89 Hun, 67, 35 N. Y. Supp. 82.

It results that we do not feel justified in so extending the construction put upon the statute in Cashin v. Pliter, as to include this case.

[2] 2. Defendant requested peremptory instructions in its favor, in substance, that no damages for delay in getting the dredge out of the

[1] See Axe v. Tolbert, 179 Mich. 556, 146 N. W. 418, where the name of "Wm. Axe & Son" was held not fictitious or assumed; Cross v. Leonard, 181 Mich. 24, 147 N. W. 540, where the name "Cross Brothers" was held not fictitious; also Zemon v. Trim, 181 Mich. 130, 147 N. W. 540, where a similar holding was made in the case of "David S. Zemon & Co.," the name of one partner being represented only by the word "Co." See also Sauer v. Construction Co., 179 Mich. 618, 146 N. W. 422.

canal and into the lake could be recovered because such damages were not within the reasonable contemplation of the parties in making the contract. The argument is that it could not reasonably have been contemplated that more than a day or two would be consumed in getting the dredge back to the mouth of the canal, and that a storm so violent as to obstruct the canal and cause a delay of about 30 days could not reasonably have been expected.

Doubtless the parties did not expect to meet the serious obstructions actually encountered; but unexpected difficulties are not enough to excuse nonperformance of a contract, and even if the evidence tended to show (which we do not hold) that the storm which caused the sand bar was unprecedented, or even more violent than likely to occur at that season of the year, it certainly did not conclusively so establish, and so could not form the basis of peremptory instructions.

[3] 3. Defendant also requested instructions, in substance, that it was plaintiff's duty, "at the expiration of the term of employment," to take the dredge out of the canal, that defendant was under no obligation to do so, and that plaintiffs cannot recover for default or neglect on their part or on account of the delays occasioned by their own neglect.

The jury was instructed, however, that it was defendant's duty to get the dredge out of the canal and to furnish such tools as were necessary therefor; that plaintiffs could not recover for delay due to their performance of their own work; but that, while it was their duty to give defendant such assistance as he asked for, and to use their own men and the dredge to assist in operations requested by defendant within plaintiff's line of work, in removing the obstacle and getting out of the canal, yet, if plaintiffs did all that they were asked to do, they would be entitled to recover the full amount claimed.

We think the court properly charged that it was defendant's duty to deliver the dredge at the mouth of the canal; but one injured by the breach of a contract is required to do everything reasonably within his power to minimize his damages;[2] and while the action here is not strictly to recover damages for delay in returning the dredge to the agreed place, the stipulated payment of $100 per day during the period in question is not, under the peculiar circumstances of the case, so different in principle from damages for delay in returning as to make the rule referred to wholly inapplicable. The work for which the dredge had been hired was finished and defendant's beneficial use of the dredge ended; his only remaining duty was to pay for the time consumed in returning it to the agreed place. During such return, not only were plaintiffs actually in charge of the dredge through their own crew, but plaintiff Bechill (whom we shall hereafter call plaintiff) was personally upon it. Although we think defendant properly chargeable with the expenses of employing the outside assistance needed, it was, we think, plaintiff's duty to co-operate with defendant in de-

[2] Warren v. Stoddart, 105 U. S. 224, 26 L. Ed. 1117; Lawrence v. Porter (C. C. A. 6th Cir.) 63 Fed. 62, 11 C. C. A. 27, 26 L. R. A. 167; Campfield v. Sauer (C. C. A. 6th Cir.) 189 Fed. 576, 111 C. C. A. 14, 38 L. R. A. (N. S.) 837; Canton-Hughes Pump Co. v. Llera (C. C. A. 6th Cir.) 205 Fed. 209, 123 C. C. A. 397.

vising, suggesting and carrying out measures for freeing the dredge when obstructions were met, unless relieved therefrom by defendant's express and voluntary assumption of sole authority over the operation; we think such assumption does not conclusively appear as matter of law. The court erred, in our opinion, in instructing the jury absolutely that plaintiffs discharged their duty if they did all that defendant asked of them.

We think the instruction may have been prejudicial; for the record, in our opinion, raised a question of fact whether plaintiffs did do everything they reasonably could have done to relieve the situation. True, it was conceded that plaintiffs did everything they were expressly asked to do; but there was also testimony that they "made no effort or attempt on their own account to get out of there." There was also testimony tending to show that in the early part of the return movement plaintiff caused a delay of perhaps a day by a refusal to allow the dredge to proceed under claim that it would collide with a water pipe in the canal bed, although it was finally found that there was substantial clearance way. It was also conceded by plaintiff that the method of releasing the dredge by building dams and floating her, if adopted when the bar was first encountered, would have required but three or four days to free the dredge. This would have saved more than three weeks time.

True, the jury might have concluded that plaintiff's fear of colliding with the water pipe was well-founded, and that plaintiffs were not remiss in failing, early in the operation, to hit upon the expedient (actually suggested at the last by defendant's manager), of floating the dredge by the use of dams. But we think that, having in view plaintiff's experience and his actual charge of the dredge and its movement, and the permissible inference from his testimony that he refrained from criticising methods he did not approve because defendant's manager "was running the job and trying to get the sand bar out," there was room for a conclusion that he did not do all he reasonably could to relieve the situation, had he recognized an active and affirmative duty in that direction; and although the court properly left it for the jury to say whether plaintiffs were justified in refusing to let the wrecker haul the dredge off the bar through fear of injury to it, we think the jury should not have been told that that matter was (as the court thought), "the only fault alleged and concerning which there is an issue," and that plaintiffs' duty should not have been expressly limited as it was by the charge in the respect before referred to.

For these errors in the charge referred to, the judgment must be reversed, and a new trial awarded.