# CASES

## ARGUED AND DETERMINED

#### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### WESTERN INDEMNITY CO. v. CRAFTS et al.

#### (Circuit Court of Appeals, Sixth Circuit. March 6, 1917.)

#### No. 2892.

1. COURTS ⬅109—RULES OF DECISION—PRECEDENTS—SYLLABUS OR OPINION.
   The law of a case decided by the Supreme Court of Ohio before the court's adoption of the rule requiring a syllabus of the points decided to be approved by the concurring judges (5 Ohio St. v, rule 6), is to be determined from the opinion.

2. DEPOSITARIES ⬅6—STATE FUNDS—STATUTES—RATIFICATION.
   While a state is not bound by the terms of its own general statutes, except when a contrary purpose is expressly declared, yet the state may ratify a transaction of its treasurer, /who deposited state funds in violation of the statute.

   [Ed. Note.—For other cases, see Depositaries, Cent. Dig. § 20.]

3. DEPOSITARIES ⬅6—STATE FUNDS—RATIFICATION.
   Despite Bates' Ann. St. Ohio, § 6841 (Page & A. Gen. Code, §§ 12873–12875), denouncing the loan or deposit of public moneys as embezzlement, but with a proviso permitting the treasurers of certain municipalities to deposit the moneys of such bodies with either state or federal banks, the state treasurer, on the faith of a bond given by a trust company in his favor and with plaintiff's assignor as surety, deposited state funds with such trust company before the depository act of April 25, 1904 (97 Ohio Laws, p. 535; Bates' Ann. St. §§ 200—2 to 200—9), went into effect. After the depository act became operative, the trust company surrendered the original certificates of deposit, issued new ones, and gave a new bond direct to the state, with the same surety as that of the old bond. Defendants had, on plaintiff's assignor executing the original bond, entered into a contract to indemnify such assignor for any loss occurring under such bond, or renewals thereof, or any new obligation in its place. Some years thereafter the state, the deposit not having been paid by the trust company, sued and recovered on the second bond. *Held*, that as the depository act had gone into effect in the meantime, and a second bond had been executed in lieu of the first, such action was not a ratification of the original unauthorized deposit.

   [Ed. Note.—For other cases, see Depositaries, Cent. Dig. § 20.]

4. CONTRACTS ⬅131—INDEMNITY CONTRACTS—ILLEGALITY OF CONSIDERATION.
   The purpose of the whole transaction being to induce the state treasurer to make a deposit in defiance of the law, the indemnity contract is unenforceable because of the illegality of the consideration; the whole transaction being permeated by such illegality.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 594–607.]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

240 F.—1

5. CONTRACTS ⬤⟹137(3)—CONSIDERATION—ILLEGALITY.

Every part of the consideration goes equally to the whole promise, and, if any part of it is contrary to public policy, the whole promise falls.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 705.]

6. CONTRACTS ⬤⟹138(2)—INDEMNITY CONTRACTS—ILLEGALITY.

Where defendants were not liable on a contract to indemnify plaintiff, who had executed a surety bond to induce the state treasurer to make a deposit of public moneys in defiance of law, plaintiff could not, by notifying defendants of the pendency of a suit on a bond substituted for the original one and demanding that they defend the action, create any rights against them.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 686, 687, 689.]

7. INDEMNITY ⬤⟹14—INDEMNITY TO SURETY—CONCLUSIVENESS AGAINST INDEMNITOR OF JUDGMENT AGAINST INDEMNITEE.

Where defendants' contract to indemnify plaintiff from liability on a bond executed to enable a trust company to secure a deposit of state funds in defiance of law was not in issue and could not be brought in issue in an action on a bond substituted for the original one, the judgment in such action is not conclusive on defendants.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 41.]

In Error to the District Court of the United States, for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Action by the Western Indemnity Company against William H. Crafts and others. There was a judgment for defendants, and plaintiff brings error. Affirmed.

T. L. Johnson, of Cleveland, Ohio, for plaintiff in error.

D. C. Westenhaver, of Cleveland, Ohio, for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and HOLLISTER, District Judge.

WARRINGTON, Circuit Judge. The writ of error is prosecuted by the Western Indemnity Company to reverse the judgment below sustaining defendants' demurrer and dismissing the petition. The action was based upon a written instrument dated August 15, 1904, whereby the defendants had undertaken to indemnify another company, the Federal Union Surety Company (herein called Federal Company), against loss under a certain bond in the sum of $20,000, bearing date August 11, 1904, given by the Euclid Avenue Trust Company (herein called Euclid Company) of Cleveland, Ohio, as principal, and the Federal Company, as surety, "running to W. S. McKinnon of Ashtabula, Ohio." The instrument first mentioned in terms binds defendants to indemnify the Federal Company under the bond of August 11, 1904, and also under any "renewals thereof, or other and new obligations (given) in its place or in lieu thereof." Later, on December 29, 1904, the Euclid Company, as principal, and the Federal Company, as surety, executed a bond in the sum of $20,000 in favor of the state of Ohio. May 8, 1908, the Euclid Company made an assignment for the benefit of its creditors; and its assignee subsequently paid the state $10,065.12. The state thereafter recovered judgment against the Fed-

eral Company for the balance due under the bond last mentioned; and admittedly the present plaintiff in error (hereafter called the Western Company), having succeeded to the rights and assumed the liabilities of the Federal Company and having paid and satisfied such judgment of the state, relies in its present action against defendants upon their indemnity agreement of August 15, 1904, to recover the amount so paid to the state, together with certain counsel fees, costs, and expenses set out in the petition.

The demurrer, sustained below, sets out two grounds: (1) That the facts stated in the petition do not constitute a cause of action; and (2) that "the alleged contract upon which the petition is based is void as against public policy." The petition shows that when the first bond was given by the Euclid Company and the Federal Company, and the indemnity contract was given by the defendants, as before pointed out, William S. McKinnon was treasurer of the state of Ohio, and that he thereafter continued to hold such office until the date of his death, November 17, 1908; that on or about the time such first bond was executed, August 11, 1904, McKinnon "deposited, of the public moneys of the state of Ohio," with the Euclid Company, the sum of $20,000, to be held by that company "as a deposit to the credit of the state of Ohio, and to be repaid to the said state of Ohio upon demand made * * * by the said William S. McKinnon, treasurer, * * * upon said deposit." Although the petition does not distinctly state the relations existing between the Euclid Company and the present defendants at the time the Euclid Company's first bond was given (August 11, 1904), or at the time the defendants' indemnity contract was executed (August 15, 1904), yet it is fairly to be deduced from admitted facts that on those dates, as also at the date of the last bond, the defendants were officially and pecuniarily related to the Euclid Company. For instance, it is disclosed by the petition: (1) That the Federal Company became surety upon the Euclid Company's first bond at the "request" of the defendants; (2) that the Euclid Company's last bond, with the Federal Company as surety, was executed "as a renewal of and in lieu of" the Euclid Company's first bond and "at the instance of said defendants" (such requests, in view of defendants' promises in the indemnity contract and in the absence as here of allegation to the contrary, give rise to a presumption that they were throughout officially and pecuniarily related to the Euclid Company); and (3) that, when the second bond was given, defendant Crafts was president and the defendant Thomas secretary-treasurer of the Euclid Company; and, further, we understood counsel to concede at the argument of the cause that Crafts and Thomas were president and secretary-treasurer, respectively, and the other two defendants directors of the Euclid Company during the period covered by the dates of the instruments above mentioned. If this be a right interpretation of the facts deducible from the record and the concessions of counsel, the grounds of the demurrer, especially the second ground, will be readily understood when considered in connection with the statutory conditions prevailing in Ohio at the times the instruments alluded to were executed.

When the first bond of the Euclid Company, with the Federal Com-

pany as surety, and the indemnity contract of the defendants were respectively executed in August, 1904, a statute of Ohio denounced acts like the act of McKinnon in depositing the money of the state with the Euclid Company as felonies (section 6841, 3 Bates' Ann. Ohio Stat. [6th Ed.], now sections 12873, 12874, 12875, 6 Ohio Gen. Code). The statute is too long to quote here. It is enough to say that it embraces a number of subjects and so discloses abundant reason for its continuance after the passage of the depository statute which was subsequently enacted. It (section 6841) in terms applies to all officers charged with the safe-keeping and the disbursement of public moneys of the state, or of any county, township, municipal corporation, board of education, cemetery association, "or company in this state," and denounces the loan or deposit of any such money as embezzlement, but with a proviso which in effect permits a treasurer of a township, municipality, board of education, or cemetery association to deposit the money of any such organization with either state or federal banks. True, a statute was passed April 25, 1904, approved May 3, 1904, entitled "An act to provide a depository for state funds" (1 Bates' Ann. Ohio Stat. §§ 200—2 to 200—9; 97 Ohio Laws 535), which authorized the state treasurer to deposit moneys of the state in such banks or trust companies "as shall have been approved * * * by the board of deposit"—comprising the treasurer, auditor, and attorney general—therein provided for; but by the terms of section 2 this act did not become effective until on and after the first Monday in October, 1904, since the board of deposit was not empowered to meet for purposes of designation and approval of banks or trust companies as state depositories until that date, which, of course, was after the dates alike of the Euclid Company's bond, with the Federal Company as surety, in favor of McKinnon, and the indemnity contract of defendants. Thus in August, 1904, all state funds were held subject to the prohibition of the statute (old section 6841), and they continued so to be held except as to such banks as the board of deposit might on or after the first Monday of the following October designate or approve as state depositories; but it will be observed that the Euclid Company's bond in favor of the state of Ohio, with the Federal Company as surety, was executed after the depository statute became effective. The provisions of these two acts, therefore, plainly point to a difference in statutory effect upon the two instruments of August, 1904, on the one hand, and the instrument of December, 1904, on the other. Indeed, one effect of the depository statute, in contrast with the inhibitory act, may be seen in the judgment recovered by the state against the Federal Company upon the bond of December 29, 1904. We are not concerned for the moment with the effect of that judgment, further than to say that the suit was in fact brought on that bond (not on the bond of August 11, 1904), and that, although the state failed in the common pleas court (State of Ohio v. Federal Union Surety Co., 21 Ohio Dec. 571), it succeeded in the Ohio circuit court and in the Supreme Court. The opinion of the circuit court has not been published, though counsel have furnished a copy; and the Supreme Court affirmed the judgment of the circuit court, save as to a certain amount of interest, with-

out opinion (Federal Union Surety Company v. State of Ohio, 91 Ohio St. 392, 110 N. E. 1059); and hence, apart from what will be shown later, it might fairly be presumed that the judgment was founded on facts arising solely under the depository act.

The controlling question is whether, in view of the crime involved in the act of depositing the money of the state with the Euclid Company in August, 1904, recovery is allowable at the suit of the Western Company (as the successor in right of the Federal Company) against the defendants upon their indemnity contract of that month.

[1, 2] Counsel for plaintiff contend, in the first place, that this question is met through certain acts of alleged ratification by the state. It is urged in support of this theory that it was open to the state itself to ratify the acts of McKinnon in making the deposit of August, 1904, and so to validate the deposit and, if need be, the bond of the 11th of that month concerning which the defendants gave their indemnity contract; and that the state did adopt and ratify and so validate every unlawful act of McKinnon through the suit brought upon the bond of December 29, 1904, and the recovery had thereunder. Counsel's main reliance is placed on the decision in State of Ohio v. Executor of Buttles, 3 Ohio St. 309. The pertinence of the case may be considered with reference to the order in which the two features of the contention are stated. In that case, it is true, it was presumed on demurrer to the petition that the state had ratified the bond there in issue; and that bond was in principle similar to the August bond here. The bond there ran in favor of the Ohio Canal Fund Commissioners, and the money involved belonged to the state and was under the control of the commissioners. The money had been deposited by the commissioners with the Columbus Insurance Company, and, upon default of that company, suit was commenced in the name of the state and upon the bond mentioned. The case was decided before the adoption of the rule requiring a syllabus of the points decided by the court in each case to be approved by the concurring judges (5 Ohio St. rule 6, p. v); and therefore we must look to the opinion for the law of the case. The bond taken by the fund commissioners, like the bond taken by McKinnon on August 11, 1904, was given to secure the return of money belonging to the state, and the deposit or loan of such money by the agencies charged with its safe-keeping was denounced as a felony. Of course, as Judge Ranney in substance said, the sovereign enacting such a prohibitory law is competent to waive its violation; and the question at last in that case was reduced to one of adoption and ratification by the state itself of the forbidden act of the state's agents. Upon this subject it was said (3 Ohio St. at page 324):

"But the state, through its legislative department, had power to make such a contract; and just as ample power to ratify one already made without authority. On this demurrer we are bound to suppose it has ratified this contract; and, if it has, the contract has taken effect between parties under no legal impediment to contract, upon a money consideration, and requires nothing to be done in its performance in violation of any law or of public morals."

The principle thus recognized finds further support in the settled rule that a state is not bound by the terms of its own general statutes, ex-

cept when a contrary purpose is expressly declared. Ohio ex rel. v. Board of Public Works, 36 Ohio St. 409; State ex rel. v. Railway Company, 37 Ohio St. 157, 176.

[3] Assuming then that counsel are right in their reliance upon the rule of the Buttles Case that the state had power to ratify the acts of its treasurer in making the deposit and in receiving the bond of August 11, 1904, still the question remains whether the power so to ratify was exercised. As regards the claim that the state ratified those acts through its suit upon the bond of December 29, 1904, it is to be observed that more than two months prior to the execution of that bond the depository act had become effective, that the bond recites on its face that the Euclid Company (bank) had then been designated and approved as a state depository, and that the suit was not commenced until nearly five years later, December 4, 1909. Moreover, an important fact was developed in the suit which vitally affects plaintiff's claim of ratification. The opinion of the Ohio circuit court in the case (Federal Union Surety Company v. State, supra) shows that the old certificates of deposit which had theretofore been issued by the Euclid Company to McKinnon were surrendered and canceled and new certificates taken when the last bond was given; in other words, the transaction was treated by the circuit court as a new and distinct deposit of the state's money; and, since the decision was affirmed by the Supreme Court of Ohio without opinion, it must be concluded that that court also regarded the new certificates as a new deposit. It follows that the effect of those decisions was to consider the transactions occurring under the depository act as a repudiation, rather than a ratification, of the transactions which took place in the previous month of August. If, then, it be assumed upon the present demurrer, in accordance with the rule of the Buttles Case, that the Legislature of the state authorized the suit to be brought, it would be a perversion of the facts to treat the transactions of August, 1904, as having been adopted and ratified through the supposed legislative action authorizing the suit of 1909 to be brought. The natural inference arising from the commencement of the suit is that the deposits therein sought to be recovered, as also the bond given to secure them, had the full and exclusive sanction of the depository statute. The case of the plaintiff, then, is to be stripped of all aid which its counsel insist it derived through alleged acts of the state, and is to be tested solely according to the acts of the immediate parties to the August transactions.

[4, 5] It is further contended that since the statute (old section 6841) does not in terms make it a crime to receive a deposit of money belonging to the state, nor expressly denounce as unlawful a bond given to secure repayment of the money, it must result that the indemnity contract in suit cannot be regarded as unlawful. The learned counsel endeavor to establish this proposition by decisions which, where applicable, are of course authoritative. For example, Harris v. Runnels, 53 U. S. (12 How.) 79, 83, 13 L. Ed. 901; Dunlop v. Mercer, 156 Fed. 545, 555, 86 C. C. A. 435 (C. C. A. 8). And we may in addition call attention to Carland v. Heckler, 233 Fed. 504, 506, 147 C. C. A. 390 (C. C. A. 6), and Reichardt v. Hill, 236 Fed. 817, 825, —— C. C. A. ——

(C. C. A. 6); but we do not regard those decisions as applicable here. Upon the facts admitted by the demurrer to the present petition, it cannot reasonably be doubted that, when the indemnity contract in issue was executed and delivered, all the parties named in the instrument knew it was an essential step in a design to induce the treasurer of the state of Ohio to deposit moneys of the state with the Euclid Company, and obviously the parties were chargeable with notice of the statute which denounced such an act of the treasurer as a felony. In saying that this was the purpose of the indemnity contract, we have in mind that the state treasurer was not a formal party to the contract, but upon the admitted facts it is perfectly evident that the Federal Company would not have indemnified the state treasurer by becoming surety upon the Euclid Company's bond of August 11, 1904, unless the defendants had in turn secured the Federal Company by this indemnity contract. Thus it is sought to enforce a contract which was executed and received with the plain intent and purpose to promote a scheme to divert state moneys from the state treasury to the Euclid Company; and while it is true, as counsel insist, that the statute did not in terms make it a crime to receive and secure deposits of state moneys, still the inhibition of the statute is broad enough to forbid a scheme looking to such a diversion of state moneys. Estate of Ramsay v. Whitbeck, 183 Ill. 550, 568, 56 N. E. 322. The statute clearly implies a rule of public policy which is condemnatory of such a scheme, and the effect of this was to taint the very consideration upon which the indemnity contract was founded.

The defendants by their indemnity contract expressly bound themselves, in consideration of the Federal Company's execution of the bond of August 11, 1904, to pay to that company an annual cash premium "in advance on the 11th day of August, 1904, (and) in each and every year during the time the (Federal) Company shall be and continue liable upon the said instrument. * * *"· It is to be presumed that the defendants' official and pecuniary interests in the Euclid Company would receive a distinct benefit through the deposits of the state funds, and the inhibitory provision of the statute applied whether the deposits were· made "with or without interest." The consideration therefore which the several parties to the indemnity contract were thus to receive through the consummation of the August transactions necessarily calls for application of the settled rule that a contract will not be enforced where any part of the consideration is opposed to public policy or otherwise tainted with illegality. As Mr. Justice Holmes said, in Hazelton v. Sheckells, 202 U. S. 71, 78, 26 Sup. Ct. 567 [50 L. Ed. 939, 6 Ann. Cas. 217] :

"Every part of the consideration goes equally to the whole promise, and therefore, if any part of it is contrary to public policy, the whole promise falls."

See, also, McMullen v. Hoffman, 174 U.. S. 639, 654, 19 Sup. Ct. 839, 43 L. Ed. 1117; Oscanyan v. Arms Co., 103 U. S. 261, 268 et seq., 26 L. Ed. 539; Arnold v. Clifford, Fed. Cas. No. 555, C. C., decided by Mr. Justice Story on circuit; Widoe v. Webb, 20 Ohio St. 431, 435, 5 Am. Rep. 664; McQuade v. Rosecrans, 36 Ohio St.

442, 448; E. E. Taenzer & Co. v. Chicago, R. I. & P. Ry. Co., 191 Fed. 543, 550, 112 C. C. A. 153 (C. C. A. 6); Cleveland, C., C. & St. L. Ry. Co. v. Hirsch, 204 Fed. 849, 854, 123 C. C. A. 145 (C. C. A. 6); Estate of Ramsay v. Whitbeck, supra (183 Ill. 550, 566, 56 N. E. 322); Harrington's Adm'r v. Crawford, 136 Mo. 467, 471, 472, 38 S. W. 80, 35 L. R. A. 477, 58 Am. St. Rep. 653.

It thus becomes unnecessary to consider the claim that a portion of the indemnity contract is applicable to the bond of December 29, 1904, and that this portion alone warrants recovery for the amount of the judgment rendered in the state suit. The complete answer to this is that the present action could not be stated (and it certainly has not been) without disclosing the entire indemnity contract and its evident object and, consequently, the illegality of its consideration. McMullen v. Hoffman, supra, 174 U. S. at page 656 et seq., 19 Sup. Ct. 839, 43 L. Ed. 1117.

[6, 7] Still another ground of reversal is urged. It is alleged that the Federal Company notified defendants of the pendency and nature of the state suit and demanded that they appear and make defense to the cause of action; and that, having failed to do so, they are bound by the judgment. This attempt to vouch the defendants into that suit is based upon the theory that the Federal Company had a right of action over, and that the present plaintiff has succeeded to that right; but this ignores the illegality of the indemnity contract. Further, and as the present Mr. Justice Clarke pointed out below, since the indemnity contract was not in issue and could not have been made an issue in the state suit, the judgment therein cannot operate as an estoppel against the defendants.

The judgment is affirmed.