MISSAUKEE FARM & INVESTMENT CO. *v.* FERRIS.

PARTNERSHIPS—BANKS—NAME—CERTIFICATE OF MEMBERSHIP.

Where a banking partnership was organized under the name of the Missaukee County Bank, under the provisions of Act No. 160, Pub. Acts 1859, and the defendants, who executed their note and mortgage to the bank, knew with whom they were, in fact, dealing, and were not misled by want of knowledge of the persons who constituted the firm, the failure of the partners to file a certificate of membership under Act No. 101, Pub. Acts 1907, or to show such changes in the membership of the firm as occurred after its original articles were filed, showing the names of the copartners, was no defense to the foreclosure of a regularly executed mortgage in equity; substantial compliance with the law of organization of the firm, by filing articles of partnership that contained the names of the then members of the bank, sufficiently authorized them to continue in business, and there was no ground in equity to defeat the mortgage.

Appeal from Missaukee; Lamb, J.  Submitted April 11, 1916.  (Docket No. 71.)  Decided September 27, 1916.

Bill by the Missaukee Farm & Investment Company against Elbert C. Ferris and another for the foreclosure of a mortgage.  Defendants filed an answer in the nature of a cross-bill to have said mortgage declared void.  From the decree rendered, defendants appeal.  Affirmed.

*Gaffney, Miltner & Millington,* for complainant.

*Broomfield & Worcester,* for defendants.

MOORE, J.  This case was commenced in December, 1914.  The trial judge stated the questions involved so clearly in a written opinion that we quote from it:

"The bill of complaint is filed to foreclose a certain real estate mortgage given by defendants Elbert C. Ferris and Marjorie Ferris, his wife, to Missaukee County Bank, to secure the repayment of the sum of $1,500, represented by a promissory note of even date for the sum of $1,500 and any renewal thereof, which said mortgage is dated on the 26th day of November, 1909, and covers," etc.

"Defendants Elbert C. Ferris and Marjorie Ferris by answer deny the essential allegations of the complainant's bill, and claim as a matter of law that neither the mortgage nor the note mentioned in the bill is now, or ever was, a valid and subsisting obligation against them, for the reason that the said Missaukee County Bank, the mortgagee in the said mortgage and payee in the note secured thereby, was, at the time the mortgage and note were given, doing business under an assumed name, and had not filed, or caused to be filed, with the county clerk of Missaukee county the certificate required by sections 5271 to 5276, inclusive, of the Compiled Laws (2 Comp. Laws 1915, §§ 6715-6721), or the certificate required by Act No. 101 of the public Acts of 1907 (2 Comp. Laws 1915,

§§ 6349-6353), * * * and for the same reasons deny the validity of the assignment.

"By way of cross-bill defendants Elbert C. Ferris and Marjorie Ferris claim affirmative relief upon the following grounds: (a) That the note is void and illegal for the reason that the Missaukee County Bank was a copartnership doing business under an assumed and fictitious name and had not, up to June, 1913, or at any other time, filed, or caused to be filed, with the county clerk of Missaukee county the certificate required by Act No. 101 of the Public Acts of 1907, or by sections 5271 to 5276, inclusive, of the Compiled Laws of 1897; (b) that the said mortgage is void and illegal for the reasons set forth in item (a); * * * (d) that the note and mortgage are usurious. * * *

"The Missaukee County Bank was organized as a copartnership in 1886, under Act No. 160 of the Laws of 1859 (2 Comp. Laws 1915, §§ 6715-6721), and has continued to do business with some changes in membership up to and since February 16, 1914, with its place of business at Lake City, Missaukee county, Mich. On the 22d day of June, 1902, articles of association with affidavit attached were filed with the county clerk of Missaukee county, showing that on the 14th day of June, 1902, Thomas Kelly, James Cavanaugh, Francis O. Gaffney, and Miles E. Stitt associated themselves together as copartners for the transaction of a general brokerage, exchange, and banking business under and by virtue of the provisions of sections 5271 to 5276 of the Compiled Laws of 1897. These articles, among other things, show the name of the copartnership, place of business, full name and residence of each and every member, the terms of the copartnership, the length of time it is to continue. So far as the record shows this certificate was the only attempt to comply with the provisions of sections 5271 to 5276 of the Compiled Laws up to November 26, 1909, and from thence to December 26, 1911. * * *

"Some time between 1902 and 1906 Miles E. Stitt died. No new certificate was filed, but the business was conducted as before. In 1906 James Cavanaugh transferred his interest to Francis O. Gaffney and Thomas Kelly, but no new certificate was filed; the

business was conducted as before. On November 26, 1909, when the instruments in question were executed, the Missaukee County Bank was run and owned by Francis O. Gaffney and Thomas Kelly, and they were continuing the business under and by virtue of the articles and certificate filed in 1902. On December 26, 1911, new articles of copartnership were filed with the county clerk of Missaukee county, showing that said copartnership, doing business as Missaukee County Bank, was then composed of Thomas Kelly, Francis O. Gaffney, Henry Miltner, and Christopher C. Lerg. * * * These articles show the name and address of each and every member of the copartnership, the name of the firm, the place of business, the character of the business, the term of its existence as five years, and may be continued for a longer time by mutual consent of all the parties interested. All four copartners signed the articles December 31, 1910. No other articles or certificates were filed until February, 1913, when John F. Doudna was taken in as a member of the copartnership. New articles of copartnership were then filed. They were signed by all members of the copartnership and sworn to by all the members thereof, on the 31st day of January, 1913. These articles show the character of the business, name of the firm, names and addresses of the members, place of business, time of its duration, and that the firm succeeds to the business formerly conducted by the old copartnership of Missaukee County Bank, and that the new firm assumes the old liabilities.

"From the time of its organization to the present time the Missaukee County Bank has done, and still is doing, a general exchange, brokerage, and banking business, with its principal place of business, Lake City, Missaukee county, Mich. For some time prior to the 26th day of November, 1909, defendant Elbert C. Ferris had been dealing with the Missaukee County Bank, and on that date was owing said bank three notes, in the aggregate, interest and all, the sum of $1,128.75, also was owing for an indorsement on another note the sum of $9.56, a check on a Cadillac bank for the sum of $55.50, and also a personal account due F. O. Gaffney of $106.10. The note and mortgage in question were given by defendant Ferris

193 Mich.—19.

and wife to settle for the foregoing indebtedness. So far as the proofs show, no part of such indebtedness was in any way tainted with usury.

"On the 26th day of November, 1909, the defendant Elbert C. Ferris executed and delivered to the Missaukee County Bank a promissory note for $1,500, due 60 days after date, with 7 per cent. interest after maturity. To secure this note the defendants Elbert C. Ferris and Marjorie Ferris executed and delivered to the Missaukee County Bank, on the 26th day of November, 1909, a real estate mortgage, in which the mortgagee was stated and designated as Thomas Kelly and Francis O. Gaffney, copartners, doing business as Missaukee County Bank, at Lake City, Mich. The payee in the said note is the Missaukee County Bank. The mortgage covers the lands mentioned in the bill of complaint, and the condition is the 'repayment of the sum of fifteen hundred dollars with interest at the rate of seven per cent. per annum, payable annually, said principal to be repaid February 7th, 1910, after date hereof, in accordance with one certain promissory note of even date herewith and collateral hereto. This mortgage being given to secure said note or any renewal thereof until the same is paid in full.'

"At the time the aforesaid note and mortgage were executed and delivered the bank took out $25 as discount, and gave defendant Elbert C. Ferris credit for $1,475. With that amount he paid up his indebtedness aforesaid, and had a credit of $175.59. This note has never been paid, but was renewed from time to time, at intervals of 30, 60, or 90 days as the case might be, up to August 29, 1913, when the last renewal note, the one in question here, became due and payable. The defendant neither paid nor renewed said note at that time, nor has he paid the same, or any part thereof, since, or offered to. At every interval when the note was renewed the Missaukee County Bank was either paid in cash, or by another note discounted at the rate of 10 per cent. for the time the renewal note was to run. No interest as per the terms of the mortgage has been charged or collected. Whatever has been paid for the use of said money has been by the way of what the complainant terms 'discount' on the original note and all subsequent renewals. From the

testimony in the case I find the amount of such so-called discount paid by the defendant or reserved by the Missaukee County Bank from November 26, 1909, to August 29, 1913, to be $572.08. Since August 29, 1913, nothing has been paid either on principal or on interest, nor has any part of said principal sum been tendered by defendant to this complainant or to the Missaukee County Bank.

"The complainant herein is a corporation, organized on or about the 16th day of February, 1914, under and by virtue of Act No. 232 of the Public Acts of 1903 (2 Comp. Laws 1915, § 9017 *et seq.*), with Francis O. Gaffney, Thomas Kelly, Henry Miltner, John F. Doudna, and Christopher C. Lerg as the stockholders and incorporators. The principal place of business of complainant is now, and ever has been, Lake City, Mich. On the 16th day of February, 1914, the aforesaid mortgage and note were assigned to this complainant for a consideration of $1,700 by Francis O. Gaffney, Thomas Kelly, Henry Miltner, John F. Doudna, and Christopher C. Lerg, copartners as Missaukee County Bank, by Christopher C. Lerg, attorney in fact. Said complainant still holds said note and mortgage, and the same is due and unpaid. At the time of said assignment the said note was several months past due. * * *

"1. It is claimed by the defendants that at the time the mortgage and note in question were executed the Missaukee County Bank was without legal capacity to contract for two reasons: (*a*) That it had not complied with the provisions of Act No. 160 of the Laws of 1859; (*b*) that it had not filed the certificate required by Act No. 101 of the Public Acts of 1907.

"Upon careful consideration of the provisions of Act No. 160 of the Laws of 1859 and the purpose for which it was passed, and having in mind the articles of copartnership and affidavit attached thereto, filed June 22, 1902, I am satisfied that there was, at that time, a substantial compliance with the law, and that the Missaukee County Bank, so far as that branch of the question is concerned, was authorized to enter upon the business for which it was organized.

"Assuming, then, that the Missaukee County Bank had authority to do business by virtue of the papers

filed in 1902, did it lose that authority by reason of the fact that no other certificate or articles of copartnership were filed either after the death of Miles E. Stitt or after the transfer of the stock of James Cavanaugh in 1906?

"Section 5272 of the Compiled Laws of 1897, being section 2 of Act No. 160 of the Laws of 1859, provides as follows:

" 'In case there shall be, at any time after (the) making and filing of said certificate, any change in the name or style of said firm, or in the terms of their partnership, then a new certificate verified as before specified, shall in like manner be filed, as required by section one of this act, before such change shall take effect; and until such new certificate shall have been made and filed, as above specified, the individual member or members of the firm, as set forth in the certificate on file, shall be held to be the actual members of the firm, and in all respects holden and liable for any obligation, debt or liability, incurred by the said company, as brokers or exchange dealers.'

"In absence of any authority to the contrary I do not believe it was the intention of the legislature, in passing Act No. 160 of the Laws of 1859, to have, or intend the failure on the part of any copartnership, organized thereunder, to file a new certificate in case of the death of one of the copartners, or in case of the sale of stock by one of the copartners to the remaining copartners, *ipso facto*, work or operate as a dissolution of the copartnership, the articles of copartnership being themselves silent upon that subject. * * *

"Defendant Elbert C. Ferris had on numerous occasions recognized the capacity of the Missaukee County Bank to contract by actually entering into contracts with it, voluntarily and without question. On November 26, 1909, he entered into the written contracts in question with said Missaukee County Bank, which said contract the bank has fulfilled on its part, and which the defendant has not wholly, at least, fulfilled, or offered to fulfill. Under such a state of facts, if the Missaukee County Bank were a corporation, and the defendant had dealt with it as such, without question or objection he would be held to be estopped from raising that question, and I can see no valid reason

why the defendant should not be so estopped in this case in so far as the completeness of its compliance with the provisions of said Act No. 160 is concerned.

"It is also claimed by defendant Elbert C. Ferris that it was necessary for the Missaukee County Bank to file a certificate in accordance with Act No. 101 of the Public Acts of 1907, and, not having done so, it was therefore incapacitated from entering into the contract in question. The complainant claims that the bank, having been organized under and by virtue of the terms of a general law, and having substantially complied with its provisions, comes within the exception provided for in section 4 of Act No. 101 of the Public Acts of 1907, which reads as follows:

" 'This act shall in no way affect or apply to any corporation, partnership association, limited or special partnership duly organized under the laws of the State, or to any corporation organized under the laws of any other State and lawfully doing business in this State.'

"The language of this section of the statute is general in its scope, and, in my judgment, includes a copartnership organized under Act No. 160 of the Laws of 1859. I conclude, therefore, that it was unnecessary for the Missaukee County Bank to comply with Act No. 101 of the Public Acts of 1907. * * *

"2. It is the contention of the defendants that, at the time of the assignment of the mortgage and note by the Missaukee County Bank to the complainant, said bank had no legal capacity to make the contract for the reasons discussed under the preceding head. * * *

"From a careful consideration of the papers filed with the county clerk of Missaukee relative to the reorganization of the Missaukee County Bank, in February, 1913, I am satisfied that there was a substantial compliance with the provisions of Act No. 160 of the Laws of 1859. For the reasons before given I am inclined to hold that it was unnecessary for the said Missaukee County Bank to comply with the provisions of Act No. 101 of the Public Acts of 1907."

The court found the contract was usurious, and concludes the opinion as follows:

"Having considered the case from all angles and in all its phases, I am impressed with the conclusion that the complainant should recover in the sum of $927.92, being the balance after deducting the usurious interest payments of $572.08 from the principal sum of $1,500."

A decree was entered accordingly. The complainant did not appeal. The defendants appealed.

Stated tersely, the claim is that the note and mortgage and the assignments thereof are void for the reason that the bank had not complied with Act No. 160 of the Laws of 1859; also that said Missaukee County Bank, on November 26, 1909, was doing business under an assumed and fictitious name, and had not complied with Act No. 101 of the Public Acts of 1907, citing *Cashin* v. *Pliter*, 168 Mich. 386 (134 N. W. 482, Am. & Eng. Ann. Cas. 1913C, 697), and other cases found in the brief. In disposing of the case it must be remembered that an attempt was made by the bank when this partnership was formed to comply with the statute. The mortgage ran to Thomas Kelly and Francis O. Gaffney, copartners doing business, etc. They were two members of the original copartnership. The mortgage was given to secure the payment of a note "or any renewal thereof." The renewal note, which is unpaid, read:

"I promise to pay to the order of Missaukee County Bank $1,500.00, at the Missaukee County Bank, Lake City, Michigan, of Gaffney, Kelly, Miltner & Lerg."

So it is clear defendants knew when they made the mortgage, as well as when they made the notes, with whom they were dealing.

There are later cases than *Cashin* v. *Pliter, supra,* involving a construction of Act No. 101 of the Public Acts of 1907. Some of them are *Axe* v. *Tolbert,* 179 Mich. 556 (146 N. W. 418) ; *Sauer* v. *Construction*

*Co.*, 179 Mich. 624 (146 N. W. 422) ; *Cross* v. *Leonard*, 181 Mich. 24 (147 N. W. 540) ; *Zemon* v. *Trim*, 181 Mich. 130 (147 N. W. 540). In *Sauer* v. *Construction Co.*, *supra*, Justice STEERE, speaking for the court, said the manifest object of Act No. 101 is to protect the public against imposition and fraud. In the instant case the defendants were not deceived; they knew with whom they were dealing. In our opinion, the provisions of Act No. 101, Pub. Acts 1907, do not apply.

This is a proceeding in equity. The defendants seek affirmative relief through the agency of a cross-bill, in which it is averred:

"For as much, therefore, as these defendants and cross-complainants are without remedy in the premises, except in a court of equity, they therefore respectfully pray: (1) That the note mentioned and described in the first paragraph of said bill of complaint may be decreed to be null and void and of no effect," etc.

The defendants had the use of the complainant's money, and under the decree as made they get the use of it without the payment of any interest. By invoking the provision of the statute they now seek to avoid paying any of the money which they got from the complainant. We are not inclined to aid them in accomplishing such a palpable wrong.

The decree is affirmed, with costs.

STONE, C. J., and KUHN, OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred.