## JOHNSON *v.* PRINEVILLE.

### (196 Pac. 817.)

**Appeal and Error—Contracts—Complaint must Allege Plaintiff's Performance, and Failure to so Allege may be First Urged on Appeal.**

1. A complaint on a contract, which sets out the contract in full but fails to allege plaintiff's performance of its conditions, does not state a cause of suit or action; an objection which may be raised for the first time in the appellate court, but allegation that the work was done by plaintiff in accordance with the terms of the contract, is sufficient.

**Partnership—Partners Who Contracted in True Names not Required to File Statutory Certificate.**

2. Plaintiff partners who contracted with defendant city in their own true names were not required by Section 7777, Or. L., to file

certificate in the office of the county clerk setting forth the designation, name or style under which their business was to be conducted, etc.

**Contracts—Award of Engineer may be Set Aside Where Classification Grossly Erroneous.**

3. In equity the award of an engineer-arbitrator, made by the contract final and conclusive as to amount or quantities to be paid for, may be set aside where his classification is so grossly erroneous as to amount to fraud on the contractor.

**Arbitration and Award—Agreement Between Mayor and Contractors With City Insufficient to Amount to Submission.**

4. Agreement between the mayor and contractors with the city that the council was to decide what amount, if any, was still due the contractors, was not sufficient to amount to any submission to arbitration, particularly in the absence of showing the mayor had authority to execute any binding agreement on the subject.

**Appeal and Error—Relief cannot be Given Plaintiffs on Defendant's Appeal.**

5. Not having appealed from the decree, plaintiffs must be deemed satisfied with it, and the court cannot give them further relief on appeal taken by defendant; under Section 557, Or. L., there must be a notice by the party aggrieved as a basis for any modification of the decree in his favor.

From Crook: JAMES U. CAMPBELL, Judge.

Department 2.

The plaintiffs sue to set aside an engineer's award on a contract made between them and the City of Prineville for the construction of a railroad grade from that city to a junction with certain main line railways. The contract opens with this clause:

"This agreement, made and entered into this 30th day of March, A. D. 1917, between City of Prineville, Crook County, Oregon, by its city council, party of the first part, and E. T. Johnson and H. M. John-

3. As to what names or designations are within statutes requiring the filing of a certificate giving certain information regarding a business conducted under an assumed or fictitious name or a designation not showing the name of the person interested, see note in L. R. A. 1916D, 355.

4. Right of municipality to arbitrate disputed claim, see note in 18 Ann. Cas. 1030.

son, 305 Commercial Building, of Portland, Oregon, parties of the second part, witnesseth."

It closes thus:

"In witness whereof, said City of Prineville by its city council executes this contract and the said E. T. Johnson and H. M. Johnson do sign and seal the same the day and year in this contract first above mentioned.

> "CITY OF PRINEVILLE COUNCIL.
> "By D. F. STEWART, Mayor.
>
> "(Corporate Seal)    Attest: GEO. F. EUSTON,
> "Recorder.
> "Party of the First Part.
> "E. T. JOHNSON & SON,
> "By E. T. JOHNSON,
> "Parties of the Second Part."

No question is made but that the plaintiffs performed the work in manner and form required. Their contention is that the award of the engineer in charge of the work was so grossly erroneous in regard to the classification of materials excavated as to operate upon them fraudulently, and they seek to set aside that award and recover as upon a correct classification of the materials removed.

The following provisions appear in the agreement:

"It is further agreed, that said plans, proposals, specifications and stipulations shall be a part of this contract, and have the same force and effect as though all of the same were fully inserted herein. All of said work is to be done under the supervision and direction of the City Engineer, and all of the work shall be accepted and approved by the said City Engineer. Said City Engineer shall have the right to fully decide on all questions arising as to the proper performance of said work, and if at any time said City Engineer shall be of the opinion, and shall so certify in writing, that the work under this contract, or any part thereof, is unnecessarily delayed, or that said contractor is wilfully violating any of the same

in bad faith, or the work not commenced within the time specified in this contract, or if the said contract be not fully completed within the time named in this contract for its completion, he shall have the power to notify the aforesaid contractor to discontinue all work, or any part thereof under this contract, by written notice to be served upon the contractor, and thereupon the said contractor shall discontinue said work or such part thereof; or he may enter upon the premises and complete said work and adjust any difference in price or the damage if there be any, which the parties of the second part shall pay to party of the first part, on account thereof, and on all such matters the decision of the City Engineer shall be final, except in case the parties of the second part do not accept the ruling of the City Engineer as to quantities, classification or interpretation of this contract, such appeal from said ruling must be made in writing to the City Engineer and the City Council before the date for the payment of the next partial payment; neglect or failure to make such written appeal within the time specified all claims shall be forfeited; all such differences that cannot be adjusted by and between the contractor and the City Engineer shall be adjusted by arbitration, the contractor and the City Engineer to select a third person, and the decision of these three shall be final and binding upon both parties. The expense of such arbitration shall be borne equally by the parties to this contract. Unless such written appeal is made the acceptance of the partial payment shall be construed as an acceptance of the ruling of the Engineer.''

After stipulations as to time for completion, and extension thereof, as to liquidated damages to be paid by the contractor for failure to begin on time, to prosecute the work with diligence and to complete it when and as prescribed either by the contract or within such extension, together with the dates of

payment to be made, and the medium of payment, we find the following clause:

"The City Engineer shall, as soon as practicable after the completion of this contract, make a final estimate of the amount of work done thereunder and the value of such work, and the party of the first part shall, at the expiration of thirty days from and after the completion of the work, pay the entire sum so found to be due thereunder, after deducting therefrom all previous payments and all amounts to be retained under the provisions of this contract. All prior partial estimates and payments shall be subject to correction in the final estimate and payment."

Many other conditions appear, which are not here involved. It is admitted in the pleadings that the contract was executed as stated in the complaint and that attached thereto were stipulations, among others, in the following tenor:

"The Engineer shall determine the amount or quantities to be paid for, under this contract, and to decide all questions which may arise relative to the fulfillment of these specifications, and his estimates and decisions shall be final and conclusive.

"It is mutually agreed between the parties to the contract, that to prevent disputes and misunderstandings between them in relation to any of the stipulations contained in these specifications, or their performance by either of said parties, the Engineer shall be an umpire to decide all matters arising or growing out of said contract between them."

The complaint avers that promptly after signing the contract the plaintiffs entered upon and prosecuted the work with diligence and completed it within an extension of time agreed upon; and that the same was accepted by the defendant as completed. The following allegation appears in the complaint:

"That all of said work was done by the plaintiffs under the supervision, direction and control of the Engineer of the defendant, who exercised sole supervision over the same and the whole thereof, and over the plaintiffs in the performance thereof; that all of the said work was done by the plaintiffs in accordance with the directions of said Engineer, and in accordance with the terms of said contract and said specifications, all of which plaintiffs faithfully followed."

Substantially, it is stated in the complaint that no dispute exists between the parties as to quantities and classifications of material moved by the plaintiffs on that portion of the work beyond station No. 343, but that there is a dispute as to those matters, on the remainder of the work.

It is said that at the completion of the work the defendant's engineer delivered what purported to be a final estimate thereof, which so far as it affects the portion in dispute awarded plaintiffs $24,949.11. The complaint criticises this estimate, pointing out certain items which plaintiffs say are grossly incorrect. After a long tabulation of the work in detail, which the plaintiffs say is correct, they urge that the engineer failed to exercise an honest judgment, and for the purpose of defrauding the plaintiffs misclassified, underclassified, and underestimated the work. They finally set out in a summary the amount of their claim at $48,288.12, admitting credit thereon reducing that amount to $23,339.01. In substance, they set forth various abortive efforts to arbitrate the differences between the parties, which came to naught, as they say, on account of the defendant's refusing to participate in the proposed arbitration. The tabulations of the work appearing in the complaint are challenged in material particulars by the answer,

which sums up the total amount due to the plaintiffs at $25,094.71, which the answer says was paid the plaintiffs by the defendant.

Sundry affirmative defenses are set forth. The first is to the effect, as a plea in abatement, that the plaintiffs constituted a partnership and that they failed to comply with the statute of February 25, 1913, Laws 1913, Chapter 154, Or. L., Section 7777, relating to the registration of fictitious names used in the prosecution of partnership enterprises. Another answer contends that no written claim was made for extra work. It is said also, in substance, that all disputes beyond station No. 343 were settled by arbitration. Again, the defendant claims to have had a settlement with the plaintiffs and to have made payments amounting to $9,944; and lastly, that no written appeal was made from the action of the engineer as to quantities, classifications, or interpretation of the contract, and that no arbitration of any differences or disputes arising between the contractor and the engineer has ever been had or attempted under the terms of the contract. The reply admits the conditions of the agreement quoted in the answer, but otherwise denies the allegations of new matter in many particulars.

After the testimony was all in, the plaintiffs asked leave to eliminate from the case and from the consideration of the court, without prejudice to the commencement of another suit or action thereon, all issues arising upon the allegations of the amended complaint relating to claims for work or compensation on that part of the project beyond station No. 343, except for damages pleaded on account of delay caused by the conduct of the defendant. To this the defendant objected, but the court entered an order according to

the motion of the plaintiffs. The case was then submitted, and findings were made in favor of the plaintiffs, to the effect that the estimates and classifications of the engineer were grossly erroneous, and that the true amount to be allowed to the plaintiffs for moving materials was $38,165.43. The court also found as facts that there should be allowed to the plaintiffs the following items in addition to the sum found for moving materials: Placing culvert pipes, $116.90; construction of runways and crossings, $323; damages for unnecessary moving of camps, owing to the failure of the defendant to secure rights of way, $200; and damages for increased difficulty of construction owing to the demands of the defendant's engineer, $900. The court found in substance that from the total amount due to the plaintiffs should be deducted $25,019.71, already paid by the defendant, and reached a conclusion of law that the plaintiffs were entitled to a decree setting aside the estimate and classification of the engineer and to a money decree in the sum of $14,245.72. Upon these findings and conclusions the decree was entered accordingly in favor of the plaintiffs for that amount, with costs and disbursements taxed and allowed at $100. The defendant appeals. No appeal was taken by the plaintiffs.                                    AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. N. G. Wallace* and *Mr. Lake M. Bechtell*.

For respondents there was a brief with oral arguments by *Mr. B. G. Skulason* and *Mr. W. E. Critchlow*.

BURNETT, C. J.—1. It is argued in the defendant's brief that—

"A complaint on a contract, which sets out the contract in full but fails to allege plaintiffs' performance of its conditions, does not state a cause of suit or action, and this objection may be raised for the first time in the appellate court."

This is sound in principle, but it is not applicable to the pleadings, for we find the allegation already quoted from the complaint, that the work was done by the plaintiffs in accordance with the terms of the contract.

It is contended that the complaint shows that an engineer, Mr. Huson, was selected by the parties to arbitrate the differences from station 0 to station 343, and that he made an award. We do not so construe the complaint. The substance of that pleading, in that respect, is that negotiations were had looking to an arbitration, but that they came to naught and no arbitration was in fact had. Indeed, it is stated in the defendant's fourth separate defense appearing in its answer that no arbitration was had or agreed upon by the parties.

2. It is urged, also, that the contract was entered into by the plaintiffs as a copartnership and that they had not filed in the office of the county clerk a certificate as required by Section 7777, Or. L. That section reads thus:

"No person or persons shall hereafter carry on, conduct or transact business in this state under any assumed name or under any designation, name or style, corporate or otherwise, other than the real and true name or names of the person or persons conducting such business or having an interest therein, unless such person or all of such persons conducting said business or having an interest therein, shall
100 Or.—8

file a certificate in the office of the county clerk of the county or counties in which said business is to be conducted, which certificate shall set forth the designation, name or style under which said business is to be conducted, and the true and real name or names of the party or parties conducting or intending to conduct the same, or having an interest therein, together with the postoffice address or addresses of said person or persons. Such certificate shall be executed and acknowledged by the party or parties conducting, or intending to conduct said business, or having an interest therein, before an officer authorized to take acknowledgment of deeds."

As already noted, the contracting parties of the second part are E. T. Johnson and H. M. Johnson. The instrument was signed, "E. T. Johnson & Son, by E. T. Johnson." The attesting clause recites that "E. T. Johnson and H. M. Johnson do sign and seal the same." This statute is substantially copied from the legislation of our sister state, Washington. In the *Sutton Case,* 49 Wash. 694 (96 Pac. 428), the firm name under consideration was "A. E. Sutton & Company." In the *Hale-Tindall Case,* 66 Wash. 459 (119 Pac. 837), the firm name was "Hale-Tindall Company." In the *Merrill Case,* 70 Wash. 482 (127 Pac. 122), the firm name was "George W. Merrill Automobile Company." In all of those cases the Supreme Court of Washington exempted the partnership thus styled from the effects of the act. The principle is that the true names of the parties appear in the instrument and there is no fictitious name involved. The same doctrine was announced in *Patterson* v. *Byers,* 17 Okl. 633 (89 Pac. 1114, 10 Ann. Cas. 810), involving the firm name of Patterson Furniture Company; and in *Bolen* v. *Ligett,* 49 Okl. 788 (154 Pac. 547, L. R. A. 1916D, 355), concerning the firm name of Bolen Brothers. In California

"Lamberson and Lamberson" was sustained as a firm name exempted from the operation of the statute, in the case of *Lamberson* v. *Bashore,* 167 Cal. 387 (139 Pac. 817). In *Carland* v. *Heckler,* 233 Fed. 504 (147 C. C. A. 390), it is said that the names of partners given in the body of the contract take it out of the mischief forbidden by the statute. The firm name under consideration there was "Lakeside Dredging Company." In *Missaukee Co.* v. *Ferriss,* 193 Mich. 286 (159 N. W. 490), it was held that in equity, where the defendants knew with whom they were dealing, the statute did not apply. Here, the recitation of the individual names of the partners in the body of the contract, and the fact that there is no assumed name or any other than the real, true name of the individuals conducting the business, take the case entirely out of the operation of the statute. Only one precedent is cited by the defendant on this subject, namely, that of *North* v. *Moore,* 135 Cal. 621 (67 Pac. 1037), a California case which has been overruled by that court on more than one occasion. Aside from the principle that no fictitious name is employed, we should be bound by the construction of the statute given it by the courts of the state from which we copied it.

3. It may well be conceded that at law the plaintiffs, suing on a contract containing a clause making the engineer the arbiter or umpire between the parties and giving conclusiveness to his award, must show that that provision of the contract has been complied with as well as any other. But it is well recognized that in equity the award may be set aside, where the classification is so grossly erroneous as to amount to fraud upon the contractor. This principle was enunciated in the opinion of Mr. Justice BEAN in

*Sweeney* v. *Jackson County,* 93 Or. 96 (178 Pac. 365, 182 Pac. 380). It is also taught in *Oregon-Wash. R. & N. Co.* v. *Spokane, Portland & Seattle Ry. Co.,* 83 Or. 528 (163 Pac. 600, 989, Ann Cas. 1917C, 991), in an opinion by Mr. Justice McCamant. A careful reading of the contract discloses that the engineer may order a discontinuance of the work for four several causes: First, delay; second, bad faith violation of its terms by the contractor; third, because the same was not begun on time; and, fourth, because it was not completed within the time specified—in either of which cases the engineer may cause the contractor to discontinue all work, or in the alternative he may himself enter upon the premises and complete the same and "adjust any difference in price," or damage, and on all such matters the decision of the engineer shall be final. In respect to this, the contract provides that an appeal may be taken in writing to the city engineer and the city council; that neglect to make such written appeal within the time specified forfeits all claims; and that all such "differences" (meaning evidently the differences arising in case the engineer takes charge of the work) shall be adjusted by arbitration, the contractor and the city engineer to select a third arbiter. Evidently the clause in the contract quoted at the beginning of this opinion refers to a situation where the engineer himself has entered upon and taken charge of the work. Otherwise, we cannot construe as effectual the other clause later in the contract, that "all prior partial estimates and payments shall be subject to correction in the final estimate and payment." It is true that according to the admitted stipulations attached to the contract the engineer's decision as to amount or quantities to be paid for shall be final and conclusive, and

that he is the umpire; but this, as already indicated, is subject to the equitable rule that if the error is so gross as to amount to a showing that it is not an honest judgment and operates fraudulently upon the contractor, it may be set aside and a new award made. This is consonant with well-recognized principles of equity.

4. The defendant relies considerably upon its fourth affirmative defense, based upon the following writing:

"It is understood that the City Council is to decide what amount if any is still due E. T. Johnson & Son on R. R. Grade east of River. Mr. Johnson and Mr. Kelly to present the respective sides in the controversy; upon this decision rests the acceptance of the final payment to Mr. Johnson as offered.

"E. T. JOHNSON & SON,
"By E. T. JOHNSON.
"D. F. STEWART, Mayor."

We may well doubt whether the agreement is sufficient to amount to any submission to arbitration. More than that, it does not appear that the mayor had authority to execute any binding agreement on the subject. The record shows that the minutes of the meeting of the city council of the defendant on January 7, 1918, contain the following:

"On motion a committee composed of Mayor Stewart and two members to be selected by the mayor and as many more members of the council that will serve, were authorized to act in conjunction with the city engineer on the matter of adjusting the differences in connection with classifications on the right of way grade, with full power to make final settlement."

It does not appear that any committee was appointed or that any action was taken by a committee. The writing mentioned would indicate that the mayor usurped the whole authority thus delegated, and as-

sumed to act without reference to any associates. It is apparent that the council did not take any action under the agreement and that, whatever may have been its value as an adjusting instrument, it was abandoned by both parties.

5. It will be noted that by adding together the amounts found due to the plaintiffs in the findings of fact, we achieve an aggregate of $39,705.33, deducting from which the admitted payments of $25,019.71, there would remain a balance of $14,685.62 due the plaintiffs. The court, however, in its conclusions of law, put down this final balance at $14,245.72, making a discrepancy between the findings of fact and the conclusions of law, of $439.90. In their brief, the plaintiffs say that this was not discovered by them until they came to prepare their brief. None the less, it is an error in the decree of the Circuit Court constituting cause for appeal. In other words, the decree does not correspond with the findings of fact; but not having appealed from it, the plaintiffs must be deemed to be satisfied with it. We cannot give them further relief on this appeal taken by the defendant. It is true that under Section 556, Or. L., on an appeal from a decree the suit shall be tried anew upon the transcript and evidence accompanying it; but it is also said in Section 556 that—

"Upon an appeal the appellate court may affirm, reverse or modify, * * the decree appealed from, in the respects mentioned in the notice, but not otherwise."

Consequently, there must be a notice by the party aggrieved, as a basis for any modification in his favor. This is substantially the doctrine taught by a long line of authorities, beginning with *Shook* v. *Colohan,* 12 Or. 239 (6 Pac. 503). Some of the pre-

cedents are collated in *Crumbley* v. *Crumbley*, 94 Or. 617 (186 Pac. 423).

The testimony has been carefully read and if the case were properly here upon an appeal by the plaintiffs, it is possible that a greater amount would be allowed to them than that given by the Circuit Court; but we are limited by the principle announced in the authorities last stated. The result is that the decree of the Circuit Court must be affirmed.    AFFIRMED.

BEAN, BENSON and BROWN, JJ., concur.